**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TYRICO BARNETT,**<br><br>Plaintiff,<br><br>*v.*<br><br>**CITY OF PHILADELPHIA, et al.,**<br><br>Defendants. | **CIVIL ACTION**<br><br>**NO. 19-4754-KSM** |

**MEMORANDUM**

**MARSTON, J.** **October 29, 2020**

Plaintiff Tyrico Barnett filed this action against Defendants City of Philadelphia, Officer William J. Farrell, III, and Officer Robin Song, alleging that the officers conducted an unlawful traffic stop and wrongfully searched the vehicle he was driving. (Doc. No. 7.) During the search a handgun and controlled substances were seized. Barnett was subsequently arrested and charged with, *inter alia*, Possession of Firearm Prohibited, Firearms Not to Be Carried without License, Intentional Possession of a Controlled Substance by Person Not Registered, Carrying a Loaded Weapon, and Sale of a Controlled Substance. (*Id.* at ¶ 27.)

In his Amended Complaint, Barnett asserts five causes of action based on this incident. First, Barnett brings a 42 U.S.C. § 1983 claim against all Defendants and alleges that Defendants violated his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. (*Id.* at ¶¶ 39–40, Count I.) Specifically, Barnett claims that Defendants violated "the right to be free from police misconduct and abuse, the right to be free from unlawful stop, the right to be free from [sic] unlawful search, the right to be free from false arrest, the right to be free from false imprisonment, the right to be free from malicious

prosecution and the right to due process of law." (*Id.* at ¶¶ 39–40.) Barnett brings a nearly identical claim against all Defendants with respect to violations of state laws. (*Id.* at pp. 9–10, Count II; *id.* at ¶ 44.) In addition, Barnett asserts a bystander liability claim against Officers Farrell and Song for their failure to intervene during the commission of the alleged constitutional violations. (*Id.* at ¶¶ 49–57, Count III.) Finally, Barnett asserts a *Monell* claim against the City, in which he argues that the City maintained an improper policy or custom of, among other things, "systematically stopping and searching individuals without probable cause or reasonable suspicion," as well as a *respondeat superior* claim against the City. (*Id.* at ¶¶ 58–72, Counts IV and V.)

Defendants City of Philadelphia and Officers Farrell and Song moved to dismiss the amended complaint, arguing that Barnett failed to allege that Defendants violated his federal or state constitutional rights because probable cause existed for his arrest. (Doc. Nos. 9, 25.)[1] Plaintiff filed opposition briefs in response (Doc. Nos. 12, 26), and Defendants filed a reply (Doc. No. 14). We held oral argument on the motion on October 19, 2020.

For the reasons discussed below, we grant in part and deny in part Defendants' motions.

I.

Accepting all of Plaintiff's allegations as true, the relevant facts are as follows. On October 12, 2017, Barnett was driving a vehicle with the side windows rolled down. (Doc. No. 7 at ¶ 12.) Officers Farrell and Song stopped Barnett and told him that they had pulled him over because of a tinted window violation. (*Id.* at ¶ 14.)

[1] Because of a delay in serving Officer Song, Defendants City of Philadelphia and Officer Farrell filed their motion to dismiss on January 31, 2020, and Defendant Officer Song filed a separate motion to dismiss on June 2, 2020. In his motion, Officer Song "incorporate[d]" by reference the arguments previously asserted in the City and Officer Farrell's motion to dismiss and reply briefs. (Doc. No. 25 at p. 3.) Accordingly, we consider the two motions together.

They then detained Barnett and searched his vehicle. (*Id.* at ¶ 18.) Barnett advised the officers that the vehicle he was operating belonged to a friend.[2] (*Id.* at ¶ 23.) During the search, Officers Farrell and Song recovered a handgun from inside of a pocket located on the back of the passenger seat, as well as controlled substances from the vehicle's center console and driver's side pocket. (*Id.* at ¶¶ 20–22.)

Barnett was arrested and on October 13, 2017, he was charged with, *inter alia*, Possession of Firearm Prohibited, Firearms Not to be Carried without a License, Intentional Possession of a Controlled Substance by Person Not Registered, Use and Possession of Drug Paraphernalia, Carry Firearms Public in Philadelphia, Carrying a Loaded Weapon, and Sale of a Controlled Substance.[3] (*Id.* at ¶ 27.) Subsequently, Barnett was arraigned, and monetary bail was set at $400,000. (*Id.* at ¶¶ 29-30.)

On March 19, 2018, Barnett filed a motion to suppress statements and physical evidence based on the stop and search, and on June 7, the Philadelphia District Attorney's Office withdrew prosecution, dropped all charges, and released Barnett from custody.[4] (*Id.* at ¶¶ 31–32.) At that point, Barnett had been incarcerated for 238 days. (*Id.* at ¶ 33.)

After his release, Barnett initiated the instant action, in which he asserts claims based on the allegedly unlawful stop and search, including claims for false arrest, false imprisonment, malicious prosecution, and violation of his due process rights. (*See generally id.*)

---

[2] Although Barnett alleges in his Amended Complaint that he borrowed the vehicle from a friend "for the purpose of picking up a bedframe" (*id.* at ¶ 11), Barnett does not allege that he informed the officers of the reason he borrowed the vehicle. Also, Barnett does not allege that he told the officers that he was unaware of the handgun or any of the controlled substances found in the vehicle.

[3] Barnett's charges were listed at Docket No. MC-51-CR-0030671-2017. According to Defendants, the docket no longer exists as the charges have been expunged. (*See* Doc. No. 9 at p. 4 n.12.)

[4] Barnett does not disclose if there was a suppression hearing.

II.

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although we must accept as true the allegations in the complaint, we are not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). In other words, a "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation marks and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"To state claim for relief under Section 1983, 'a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States.'" *Spiker v. Whittaker*, 553 F. App'x 275, 278 (3d Cir. 2014) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165–66 (3d Cir. 2013)). "Section 1983 does not confer any substantive rights. Rather, it 'merely provides a method for vindicating rights elsewhere conferred.'" *Washington v. Hanshaw*, 552 F. App'x 169, 172 (3d Cir. 2014) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)); *see also Christian v. Orr*, Civil Action No. 08-2397, 2011 WL 7102019, at *7 (E.D. Pa. Mar. 1, 2011).

III.

Barnett asserts that Officers Farrell and Song unlawfully stopped him under the pretext that the vehicle's windows were tinted, and that the officers then proceeded to unlawfully search the vehicle, in violation of his Fourth Amendment rights. (Doc. No. 7 at ¶¶ 19, 39–40.) During oral argument, Defendants conceded that the search claim should proceed as Defendants did not move to dismiss that claim. (Oral Argument Tr. at 6:15–22.) Accordingly, we only consider the validity of the stop in our discussion below.

The Fourth Amendment protects people against unreasonable searches and seizures. U.S. Const. amend. IV. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)). It is well-settled that a traffic stop is a "seizure" under the Fourth Amendment. *See, e.g., United States v. Johnson*, 452 F. App'x 219, 225 (3d Cir. 2011). As the Third Circuit has explained, the Supreme Court established a "bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806 (1996)); *see also United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) ("A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation."). "For a traffic violation to legitimize a stop, the officer need only to 'have observed [the] violation prior to initiating the traffic stop.'" *United States v. Palmer*, Criminal Action No. 16-282, 2017 WL 1303477, at *3 (E.D. Pa. Apr. 7, 2017) (quoting *Lewis*, 672 F.3d at 237). A police officer executing a valid traffic stop "may exercise reasonable superintendence over the car and its passengers." *Bonner*, 363 F.3d at 216. Thus, after a car has been legally stopped,

"the police may 'escalate' the encounter by visually inspecting the interior of the car, and checking credentials and asking questions of the occupants." *Mosley*, 454 F.3d at 252; *accord Lewis*, 672 F.3d at 237 ("Once a valid traffic stop is initiated, 'an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation.'") (citation omitted).

We apply the reasonable suspicion standard to routine traffic stops. *Johnson*, 452 F. App'x at 225; *see also Lewis*, 672 F.3d at 237; *Lockhoff v. Slonaker*, Civil Action No. 16-2893, 2017 WL 2423790, at *6 (E.D. Pa. June 5, 2017) ("[S]o long as a police officer has reasonable suspicion pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), i.e., specific, articulable facts to believe that an individual has violated the traffic laws, a routine stop passes constitutional muster.") (quotation marks omitted). "Courts give considerable deference to police officers' determinations of reasonable suspicion." *Mosley*, 454 F.3d at 252. "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *United States v. Colen*, 482 F. App'x 710, 712 (3d Cir. 2012); *Johnson*, 452 F. App'x at 225. In evaluating whether an officer possessed reasonable suspicion to conduct a traffic stop, we consider the totality of the circumstances. *Lewis*, 672 F.3d at 237; *Colen*, 482 F. App'x at 712.

In this case, Barnett alleges that when Officers Farrell and Song stopped him, they told him that "he was pulled over because the windows of the vehicle he was operating were tinted in violation of Pennsylvania law." (Doc. No. 7 at ¶ 14.) However, according to Barnett, "there was no basis for [their] assertion that the windows were tinted in violation of Pennsylvania law" because the side windows had been rolled down while Barnett was operating the vehicle. (*Id.* at

¶ 15.) Thus, according to Barnett, the officers' assertion that the windows were unlawfully tinted was pretextual, so that they could conduct an unlawful stop and search of his vehicle. (*Id.* at ¶ 17.) But Barnett's pretext argument misses the point—the law clearly provides that "*any* technical violation of a traffic code legitimizes a stop, even if the stop is merely *pretext* for an investigation of some other crime." *Mosley*, 454 F.3d 252 (emphasis added). Even accepting as true Barnett's allegation that the side windows were rolled down and that, as a result, the officers presumably could not have seen that those windows were tinted, this does not automatically compel a conclusion that there was *no basis* for the officers to stop him because of a perceived tinted window violation. For example, either the front or rear windshield could have been tinted. *See, e.g.*, *United States v. Bellinge*r, 284 F. App'x 966, 968 (3d Cir. 2008) (explaining that "any tinting which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle is prohibited under Pennsylvania law") (citation omitted); *Palmer*, 2017 WL 1303477, at *4 (discussing the tint on the rear windshield).

Because Barnett pleads that the he was purportedly stopped due to a tinted window violation, Officers Farrell and Song had reasonable suspicion to conduct the stop and we therefore conclude the stop was lawful. *See, e.g.*, *Johnson*, 452 F. App'x at 225 (concluding that the stop was based on reasonable suspicion, where the sergeant stopped the vehicle because of the tinted window in violation of Pennsylvania law); *Colen*, 482 F. App'x at 713 ("The police officers had a valid basis to stop [the defendant] for investigation of a motor vehicle violation because he was driving an automobile with excessively tinted windows."); *Bellinge*r, 284 F. App'x at 968 (holding that the officers were justified in conducting the traffic stop because the officers observed tinting on the windshield); *Lockhoff*, 2017 WL 2423790, at *6 (holding that the defendants had reasonable suspicion to make the traffic stop based on their observation of the

window tint violation before conducting the stop); *Palmer*, 2017 WL 1303477, at *4 (finding that "the officers reasonably believed the windows to be illegally tinted prior to stopping [the defendant]" and as such, "it was a permissible pretextual stop"); *United States v. Gooch*, 915 F. Supp. 2d 690, 704–05 (W.D. Pa. 2012) (determining that "the stop of the Buick was based on an articulable and reasonable suspicion that the vehicle's tinted windows violated the law").

IV.

Barnett asserts claims against all Defendants for false arrest, false imprisonment, and malicious prosecution.[5] (Doc. No. 7 at ¶¶ 39–40.) In determining whether Barnett has stated a

---

[5] Barnett argues that Defendants violated both federal and state law, including his federal (Count I) and state (Count II) constitutional rights. However, during oral argument, Plaintiff conceded that there is no private right of action under the Pennsylvania constitution, thereby vitiating his claim that his Pennsylvania constitutional rights were violated. (Oral Argument Tr. at 12:15–24.) Plaintiff also noted, however, that there are state claims for malicious prosecution and false arrest. (*Id.*) Ultimately, because Plaintiff represented during oral argument that the state claims would be disposed of the same as federal claims (*see id.*), we do not conduct a separate analysis as to state law below.

With respect to federal law, Plaintiff asserts false arrest, false imprisonment, and malicious prosecution claims under § 1983, alleging that Defendants violated his Fourth and Eighth Amendment rights. However, Defendants point out, and Barnett does not dispute, that the Eighth Amendment is inapplicable because Barnett was a pre-trial detainee. *See Rosario v. Williams*, Civil Action No. 13-1945, 2014 WL 338114, at *6 (E.D. Pa. Jan. 29, 2014) ("The Eighth Amendment applies only after the state 'has secured a formal adjudication of guilt' because prior to that time it has not acquired the 'power to punish with which the Eighth Amendment is concerned.'") (citation omitted); *see also Mascio v. Borough of Clifton Heights*, Civil Action No. 05-3082, 2005 WL 8177263, at *1 (E.D. Pa. Dec. 22, 2005) (citation omitted).

In addition, Barnett alleges that Defendants violated his right to due process under the Fourteenth Amendment. However, the Fourteenth Amendment due process analysis is inappropriate when another constitutional amendment applies. *See Betts v. New Castle Youth Development Ctr.*, 621 F.3d 249 (3d Cir. 2010) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.") (quotation marks and citations omitted); *Williams v. City of Phila.*, Civil Action No. 09-4286, 2010 WL 4181873, at *5 (E.D. Pa. Oct. 22, 2010) ("Because [the plaintiff's] claims for malicious prosecution, false imprisonment and false arrest all invoke the Fourth Amendment, [the plaintiff] cannot resort to due process principles."). Last, although neither party addresses Barnett's Fifth Amendment claim, it appears to reiterate Barnett's claim that Defendants violated his right to due process. For those reasons, we consider Barnett's false arrest, false imprisonment, and malicious prosecution claims only under the Fourth Amendment.

plausible claim for each of these, we must consider whether the facts pled support a finding that Defendants acted without probable cause in arresting, incarcerating, and prosecuting Barnett. *See, e.g.*, *Spiker v. Whittaker*, 553 F. App'x 275, 278 (3d Cir. 2014) ("To state a plausible claim for false arrest, false imprisonment, or malicious prosecution under the Fourth Amendment, a plaintiff must plead sufficient facts to support a reasonable inference that the defendants acted without probable cause and are not entitled to immunity."). Put simply, the existence of probable cause would vitiate Barnett's claims.

### *A. False Arrest and False Imprisonment*

We consider Barnett's false arrest and false imprisonment claims together. *See, e.g.*, *Williams*, 2010 WL 4181873, at *5 ("False arrest and false imprisonment claims overlap in that both require a showing that the plaintiff was arrested without probable cause; the plaintiff would then have a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.") (quotation marks and citation omitted); *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) ("False arrest and false imprisonment claims are 'nearly identical claims,' and 'are generally analyzed together.'") (citations omitted).

As noted above, the Fourth Amendment protects against unreasonable searches and seizures. "Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). A warrantless arrest is reasonable under the Fourth Amendment if there is probable cause to believe that the person being arrested has committed, or is in the process of committing, a crime. *Id.*; *Wright v. City of Phila.*, 409 F.3d 595, 601 (3d Cir. 2005). Although the existence of probable cause for arrest is generally a question of fact for the jury, "a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to the Plaintiff, reasonably

would not support a contrary factual finding.'" *Eckman v. Lancaster City*, 529 F. App'x 185, 186 (3d Cir. 2013) (citation omitted); *see also Christian*, 2011 WL 710209, at *16.

"An arrest was made with probable cause if 'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Wright*, 409 F.3d at 602 (quotation marks and citations omitted); *see also Eckman*, 529 F. App'x at 186. While "mere suspicion" is insufficient to create probable cause, "an officer is not required to have evidence to prove guilt beyond a reasonable doubt." *Eckman*, 529 F. App'x at 186; *see also Wesby*, 138 S. Ct. 577, 586 (2018) (noting that probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity") (quotation marks and citation omitted); *Wright*, 409 F.3d at 601. Thus, an arrest may still pass constitutional muster even if the suspect did not actually commit a crime. *Id.* at 602. Further, "[it] is irrelevant to the probable cause analysis what crime a suspect is eventually charged with or whether a person is later acquitted of the crime for which he or she is arrested." *Id.* At bottom, probable cause for arrest "is not a high bar." *Wesby*, 138 S. Ct. at 586 (quotation marks and citation omitted).

"Whether any particular set of facts suggest that an arrest is justified by probable cause requires an examination of the elements of the crime at issue." *Wright*, 409 F.3d at 602. We therefore consider whether the officers had probable cause to arrest Barnett based on their recovery of the handgun or controlled substances from his vehicle.

As Barnett was not found in actual possession of the firearm or controlled substances seized from his vehicle, we must therefore determine whether the officers had probable cause to believe that Barnett, who was the sole occupant of the vehicle, constructively possessed the

contraband. *See Headen* v. *Clarke*, Civil Action No. 18-CV-3106, 2019 WL 1489875, at *5 (E.D. Pa. Apr. 4, 2019) ("Under long-established Pennsylvania law, possession can be proven by showing either actual possession (*i.e.*, controlled substance found on a person) or by showing constructive possession[.]") (citing *Commonwealth v. Hanson*, 82 A.3d 1023 (Pa. 2013)); *Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983)); *see also Smithwick v. Detective*, 2:18-CV-01057-MJH, 2019 WL 1458993, at *4 (W.D. Pa. Apr. 2, 2019). "Constructive possession exists, if upon review of the totality of circumstances, an individual has 'conscious dominion' over the illegal property." *DeVatt v. Lohenitz*, 338 F. Supp. 2d 588, 596 (E.D. Pa. 2004) (citing *Commonwealth v. Carroll*, 507 A.3d 819, 820–21 (Pa. 1986)).

Under the totality of circumstances, there was probable cause that Barnett had constructive possession over the firearm and controlled substances. The contraband was located in several separate areas throughout the car, all of which were within arms-length of Barnett (center console, driver's side pocket, and back pocket of the passenger seat). Barnett had control over and was operating the vehicle; in fact, he was its sole occupant. *See DeVatt*, 338 F. Supp. 2d at 597 (holding that "a reasonable officer could have found probable cause existed that plaintiff was in constructive possession of all the contraband for which he was charged," where the contraband was found in an area within the home to which the plaintiff had access and the contraband was located throughout the home, even though the plaintiff contended that he did not see the contraband); *accord Commonwealth v. Taylor*, No. 1397 WDA 2019, 2020 WL 2850272, at *3 (Pa. Super. Ct. June 2, 2020) ("Importantly, Appellant was the sole occupant of the vehicle, meaning that he, and he alone, had the ability to exercise control over all the contraband in the vehicle. Likewise, given Appellant's close proximity to the contraband on his seat, in the driver's door and the pouch behind the passenger's seat, it was reasonable for the factfinder to

infer that Appellant had the ability to exercise control over it."); *Commonwealth v. King*, No. 496 MDA 2019, 2020 WL 730914, at *4 (Pa. Super. Ct. Feb. 12, 2020) ("We have found . . . constructive possession where the weapon or contraband is within the defendant's easy reach from where seated in the vehicle and fully accessible to him . . . Here, Appellant was the driver and sole occupant of the vehicle, and the loaded Glock pistol was found in the unlocked console, next to the driver and within his reach."); *Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. Ct. 2011) (concluding that constructive possession was established where the appellant was the only person in the vehicle and a gun was found in a compartment on the passenger side of the vehicle).

Although Barnett claims he did not know the firearm or controlled substances were in the vehicle (Doc. No. 7 at ¶ 24), the Court notes that nowhere in the Amended Complaint does Barnett actually plead that he *told* the officers that he was unaware the contraband was in the vehicle. Rather, he only pleads that he advised the officers that the vehicle he was operating belonged to a friend. In any event, even if we were to take the leap Defendants appear to have taken (*see* Doc. No. 4 at p. 4) and find that Barnett alleged that he informed the officers that he did not know the handgun and controlled substances were in the vehicle, Officers Farrell and Song were certainly not obligated to credit this self-serving explanation. *See Eckman*, 529 F. App'x at 187 ("The probable cause standard does not require officers to correctly resolve credibility determinations or conflicting evidence."); *Wright*, 409 F.3d at 603 ("The officers did not believe [the plaintiff's] explanation for her entry. Although they may have made a mistake, their belief was not unreasonable in light of the information the officers possessed at the time.").

In arguing that he did not have constructive possession over the contraband and that the officers lacked probable cause to arrest him, Plaintiff notes that a suspect's mere presence in a

vehicle containing contraband does not constitute probable cause. However, the cases on which Plaintiff relies and attempts to analogize to are inapposite because those cases either involved defendants who were merely passengers (not drivers) in a vehicle that also had other occupants, or involved defendants who were one of multiple occupants of an apartment. *See United States v. Di Re*, 332 U.S. 581, 583, 587 (1948) (analyzing the lawfulness of a search of a passenger of the vehicle, where the driver and another passenger were also present in the vehicle, and explaining that the court is "not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled"); *In re T.H.*, 898 A.2d 908, 909–10 (D.C. App. Ct. 2006) (finding no probable cause existed for arrest, where the defendant had been a passenger in a vehicle containing contraband, along with another passenger and the driver, the latter of whom was absent at the time the police approached the vehicle); *Commonwealth v. Valette*, 613 A.2d 548, 548, 551 (Pa. 1992) (concluding that the defendant did not have constructive possession over the controlled substances, where the "record demonstrates nothing more than that [the defendant] was present in an apartment in which drugs were found" and several other co-defendants, all of whom were occupants of the apartment, were also present).

During oral argument, Barnett also relied on the Third Circuit's recent decision, *Harvard v. Cesnalis*, 973 F.3d 190 (3d Cir. 2020). But *Harvard* is readily distinguishable from this case. *See id.* at 195–97, 200 (concluding that a reasonable juror could find lack of probable cause for the plaintiff's arrest on a reckless endangerment charge; reasoning that the jury could find that the plaintiff acted as a good Samaritan by agreeing to give a stranger a ride home and that driving with that stranger's boyfriend on the hood of his vehicle was a justifiable risk to protect himself and the girlfriend from the boyfriend, who had launched himself onto the vehicle and

threatened to kill them both; and emphasizing that the plaintiff had called 911 and followed the 911 operator's instructions the entire time he was driving).

Finally, to the extent that Barnett contends that we cannot consider the items found during the allegedly unlawful search, Barnett is mistaken. Although the exclusionary rule may apply in criminal cases, rendering the fruits of an allegedly illegal search inadmissible, that is not the case in a § 1983 proceeding. *See, e.g.*, *Hector v. Watt*, 235 F.3d 154, 158–59 (3d Cir. 2000) (declining to apply the exclusionary rule in a § 1983 suit and explaining that "[t]he Supreme Court has made clear in many cases that the exclusionary rule is not a personal constitutional right of the party aggrieved") (quotation marks and citation omitted); *Christian*, 2011 WL 710209, at *17 ("The lack of probable cause to . . . search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant. Whatever the legality of the searches that yielded the marijuana in the pockets of [the plaintiff's] sweat shorts, possession of this drug is illegal in Pennsylvania and thus provides the basis for the police to effect a legitimate arrest.") (quotation marks and citation omitted); *Zamichieli v. Andrews*, Civil Action No. 12-cv-3200, 2016 WL 8732421, at *4 (E.D. Pa. Apr. 15, 2016) (explaining that even though the court suppressed the evidence seized from the plaintiff's vehicle during the criminal prosecution, it could still be considered when determining whether there was sufficient probable cause for the arrest in the § 1983 proceeding); *Lockhart v. City of Easton*, Civil Action No. 12-0133, 2013 WL 5225234, at *7 (E.D. Pa. Sept. 17, 2013) ("[T]he exclusionary rule does not alter the probable cause analysis because it is inapplicable in this § 1983 proceeding."). Because probable cause existed, we grant Defendants' motion to dismiss Barnett's false arrest and false imprisonment claims.

### *B. Malicious Prosecution*

To succeed on a malicious prosecution claim, a plaintiff must show that: "(1) the defendants initiated the criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Harvard*, 973 F.3d at 203 (quotation marks and citation omitted).

As with the false arrest and false imprisonment claims, to prevail on his malicious prosecution claim, Barnett must show that the proceeding was initiated without probable cause. *See id.*; *see also Eckman*, 529 F. App'x at 187. For the reasons discussed above, we find that Officers Farrell and Song had probable cause to arrest Barnett and, as a result, there was also probable cause to initiate the criminal proceeding against him in state court. *See Eckman*, 529 F. App'x at 187 ("[A] claim of malicious prosecution requires a showing that the proceeding was initiated without probable cause. Because probable cause existed to arrest the plaintiff, the defendants were entitled to summary judgment on his claim of malicious prosecution as well."); *Williams*, 2010 WL 4181873, at *4 (dismissing malicious prosecution claim because the plaintiff could not demonstrate that there was a lack of probable cause for his arrest). Accordingly, we grant Defendants' motion to dismiss the malicious prosecution claim.

## V.

Barnett also brings a bystander liability claim against Officers Farrell and Song, in which he alleges that "defendant police officers encouraged and stood idly by" while he was unlawfully stopped, searched, and arrested, and that by encouraging such behavior and failing to intervene, those officers also deprived him of constitutional rights. (*See* Doc. No. 7 at ¶¶ 50–51.)

"If a police officer . . . fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under § 1983." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (quotation marks and citation omitted); *Bryant v. City of Phila.*, 890 F. Supp. 2d 591, 601 (E.D. Pa. 2012). In other words, "if a police officer is present when another police officer violates a citizen's constitutional rights, the first officer is liable under § 1983 if that officer had reason to know that a constitutional violation . . . was being used, and that officer had a reasonable and realistic opportunity to intervene." *Id.* at 601; *see also Smith*, 293 F.3d at 651 (explaining that "an officer is only liable if there is a realistic and reasonable opportunity to intervene"). Therefore, for a bystander liability claim to survive, a constitutional violation must have been committed in the first place. *Id.* (dismissing plaintiff's claim because "a failure to intervene claim requires the existence of a constitutional violation," where the court found that the defendants did not unlawfully seize, falsely arrest, or use excessive force in seizing the plaintiff and therefore had already dismissed those constitutional claims).

In their briefs, Defendants' entire argument in favor of dismissal is that there is no underlying constitutional violation to support a bystander liability claim because probable cause existed to arrest, imprison, and prosecute Barnett. (*See* Doc. No. 9 at pp. 9–10.) But Defendants conceded during oral argument that Barnett's unconstitutional search claim may proceed and that they did not move to dismiss that claim. Thus, there is an underlying constitutional violation that provides the basis for the bystander liability claim to survive their motion to dismiss. Therefore, we deny Defendants' motion as to the bystander liability claim.

VI.

Barnett also brings two counts against Defendant City of Philadelphia. In Count IV, he asserts a *Monell* claim against the City, alleging that it developed and maintained policies and/or

customs that exhibited deliberate indifference to the constitutional rights of persons and resulted in violations of his rights. (Doc. No. 7 at ¶¶ 59–67.) In Count V, Barnett also seeks to hold the City liable for the actions of its officers based on a *respondeat superior* theory. (*Id.* at ¶¶ 69–72.)

"When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (internal quotation marks and citations omitted) ("Based on the Supreme Court's reasoning in the landmark *Monell* case, courts have recognized a 'two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom.'") (citation omitted). "In other words, [a municipality] may not be held liable for constitutional torts under § 1983 on a vicarious liability theory rooted in *respondeat superior*." *Id.*; *see also Christian*, 2011 WL 710209, at *8 ("[A] plaintiff cannot rely upon a theory of *respondeat superior* to impose § 1983 liability upon a municipality."). Barnett also conceded during oral argument that *respondeat superior* does not apply. (Oral Argument Tr. at 12:25–13:5.) We dismiss Barnett's *respondeat superior* claim against the City (Count V).

Next, although the City may "be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom," *id.*, we find that Barnett has failed to state a *Monell* claim here. Barnett pleads, *inter alia*, that:

- It was the policy and/or custom of the City of Philadelphia to cover-up and to avoid detection of acts of police abuse or improper use of authority by charging victims of police abuse and improper use of authority with criminal offenses . . .

- It was the policy and/or custom of the City of Philadelphia to inadequately supervise and train their police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of their officers . . .

- It is believed and therefore averred that the City of Philadelphia and its Police

> Departments adopted and maintained for many years recognized and accepted policies, customs and practices of, systematically stopping and searching individuals without probable cause or reasonable suspicion; systematically falsely arresting and falsely imprisoning individuals based on unlawfully and illegally obtained evidence; systematically maliciously prosecuting individuals with unlawfully and illegally obtained evidence . . .

(Doc. No. 7 at ¶¶ 60–61, 63.)

Even viewing the facts in the light most favorable to Barnett, we cannot find that Barnett alleges a specific policy or custom that violated his rights. Rather, in his complaint, Barnett merely asserts that the City of Philadelphia maintained policies, customs, or practices of engaging in acts that amounted to constitutional violations (e.g., "stopping and searching individuals without probable cause or reasonable suspicion" ¶ 63), and does not provide *any* further detail as to the alleged policies, customs, or practices. "This falls well short of the federal pleading standard contemplated by Federal Rule of Civil Procedure 8(a)."[6] *Bittner v. Snyder Cty.*, No. 08-cv-707, 2009 WL 179776, at *8 (M.D. Pa. Jan. 26, 2009) (dismissing *Monell* claim where the plaintiff "merely assert[ed], in various places, that [the] County maintained a policy, custom, or practice of engaging in acts that deprived her of her federal rights," without providing any additional detail); *see also Vasquez v. City of Phila.*, No. 19-4911, Doc. Nos. 1, 12 (E.D. Pa. Mar. 3, 2020) (dismissing *Monell* claim where the allegations were similar to those at issue here, including that "[i]t was the policy and/or custom of the City to inadequately supervise and train their police officers, including the defendant police officer John Doe, thereby failing to adequately discourage further constitutional violations on the part of their police officers" and that "[i]t is believed and therefore averred that the City and its Police Department adopted and maintained for many years a recognized and accepted policy, custom and practice of

---

[6] During oral argument, Plaintiff acknowledged that his *Monell* claim is "difficult . . . to meet in light of the standard." (Oral Argument Tr. at 13:6–19.)

systematically assaulting and battering suspects"); *Gayle v. Dorward*, 440 F. Supp. 3d 409, 413 (E.D. Pa. 2020) ("The plaintiff 'must identify [the] custom or policy, and specify what exactly that custom or policy was' to satisfy the pleading standard." (citation omitted)).

As to Barnett's assertion that the City maintained a specific policy, practice, or custom of failing to adequately train its officers (*see* Doc. No. 7 at ¶¶ 61–62), we find that it does not support a *Monell* claim because he has failed to allege that the "failure to train amount[ed] to deliberate indifference" to his rights. (*See* Doc. No. 7 at ¶ 62 (alleging the City maintained a policy or custom of inadequately supervising and training its officers, without mentioning deliberate indifference); *see also id.* at ¶ 59 (merely alleging, in a conclusory fashion and without mentioning a specific policy or custom, that the City generally developed and maintained policies and customs that "exhibit[ed] deliberate indifference to the constitutional rights of persons")); *Torres v. City of Allentown*, Civil Action No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008) (granting motion to dismiss the plaintiff's *Monell* inadequate training claim because she did not show how the training programs for police officers were inadequate or suggest how the municipality evinced deliberate indifference towards her rights and because the amended complaint "lack[ed] any specific factual allegations referencing the conduct, time, place and persons responsible for any official municipal policy or custom endorsing the police officers' conduct").[7] We therefore grant Defendants' motion to dismiss as to the *Monell* claim (Count IV).

---

[7] Separately, we note that "in order to hold a municipality liable under *Monell*, a plaintiff must first demonstrate that a Constitutional violation has occurred." *Bittner*, 2009 WL 179776, at *8 (citations omitted). The City contends that the *Monell* claim should be dismissed because there is no underlying constitutional violation. (*See* Doc. No. 9 at p. 11.) But we do not dismiss the *Monell* claim on this ground because, as the City conceded, the unconstitutional search claim may proceed, which would in turn provide the underlying constitutional violation needed for the *Monell* claim to proceed.

VII.

For the foregoing reasons, we deny Defendants' motion as to Barnett's bystander liability claim, since Defendants acknowledge that Barnett's unlawful search claim may proceed. We grant Defendants' motion as to Barnett's *Monell* claim, without prejudice. We grant Defendants' motion as to Barnett's unlawful stop claim, his false arrest, false imprisonment, and malicious prosecution claims, and his *respondent superior* claim, with prejudice.

An appropriate order follows.